UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DONNA ROGERS AND
HOMER ROGERS                                          PLAINTIFFS


VS.                                    CIVIL ACTION NO. 3:06CV36LN


NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY; LARRY WHITEHEAD;
THE NOWELL AGENCY; AND STACY BECKWITH              DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs
Donna Rogers and Homer Rogers to remand pursuant to 28 U.S.C.
§ 1447.  Defendant Nationwide Property and Casualty Company
(Nationwide) has responded in opposition to the motion and the
court, having considered the memoranda of authorities, together
with attachments, concludes that plaintiffs' motion should be
denied.

In the wake of a January 28, 2005 fire which destroyed their
home, plaintiffs Donna Rogers and Homer Rogers sought to recover
for their loss under their homeowners policy with Nationwide.
After initially tendering plaintiffs a check for living expenses
on the day of the fire, Nationwide undertook an investigation of
the claim through its adjuster, Larry Whitehead, and ultimately
denied the claim based on information that the fire was
intentionally set in two places in the home, that the Rogers were

experiencing financial difficulties prior to the fire and that

Homer Rogers had the opportunity to set the fires.[1]  Following

that denial, plaintiffs filed the present action in the Circuit

Court of Rankin County, Mississippi, against Nationwide and

Whitehead, and also against the Nowell Agency and Stacy Beckwith,

which were alleged to have sold the subject policy to plaintiffs,

alleging various claims based on the denial of their claim.

Nationwide, a nonresident company, removed the case based on

diversity jurisdiction, contending that all of the three named

resident/nonresident defendants, Whitehead, the Nowell Agency and

Beckwith, have been fraudulently joined to defeat diversity

jurisdiction.  Plaintiffs promptly moved to remand, arguing that

the resident defendants are properly joined and that remand is

thus required.

The relevant question here presented is whether Nationwide

has shown that there is no reasonable possibility of recovery

against any of the non-diverse defendants in state court.  See

Smallwood v. Illinois Cent. R.R., 385 F.3d 568, 573 (5th Cir.

2004) (en banc).  A mere theoretical possibility of recovery is

insufficient.  Travis v. Irby, 326 F.3d 644, 648 (5th Cir. 2003).

The court first turns to plaintiffs' allegations/claims

---

[1]   Plaintiffs' motion to remand includes a request to strike portions of the notice of removal, and in particular, references therein that tend to suggest the Rogers were involved in burning their home.  The request to strike is not well taken.

against the Nowell Agency and Beckwith.  Plaintiffs allege in
their complaint that they purchased the subject homeowners policy
from defendants Beckwith and The Nowell Agency and "relied upon
their professional advice and representations as to the type of
policy; the necessary amount of insurance coverage; the language
and wording of the various types of insurance coverages;
deductibles; and endorsements to the policy," and that Beckwith
and The Nowell Agency "represented to the Plaintiffs that they
would have full coverage and the policy would cover most of the
perils (including loss by fire) that were a threat to them and
their house."  They further charge that Nationwide, Beckwith and
The Nowell Agency "represented and warranted to the Plaintiffs . .
. that they would promptly and fairly pay any and all claims of
the Plaintiffs and all other claims which were covered by the
policy," and "that they offered fair and prompt claims services to
its [sic] insureds and those claiming under the terms of the
Nationwide policy," and yet when plaintiffs submitted a proper
claim under the policy for their fire loss, "Nationwide, instead
of promptly and fairly paying the Plaintiffs' claims, unreasonably
delayed processing Plaintiffs' claims and . . . Nationwide ha[s]
refused to timely pay the Plaintiffs' claims."  Plaintiffs
conclude that all defendants, including Beckwith and The Nowell
Agency, wrongfully delayed and ultimately wrongfully,
intentionally and in bad faith denied payment under the policy in

3

violation of the terms of the contract and in breach of their

duties of good faith and fair dealing, and that all defendants

"set about on a course of conduct to annoy and harass the

Plaintiffs and to avoid or delay paying the Plaintiffs' claim."

In response to plaintiffs' motion to remand, Nationwide

first asserts that plaintiffs' putative claims against Beckwith

premised on her alleged conduct in connection with the sale of the

subject policy cannot possibly succeed inasmuch as Beckwith, as

attested in her affidavit accompanying Nationwide's response, did

not sell the subject policy to plaintiffs and never talked to

plaintiffs or made any representations to them of any sort.

Nationwide further points out that while plaintiffs allege

that Beckwith and The Nowell Agency made unspecified

"representations" relating to the policy and its coverage, they do

not allege that these defendants made anything that could possibly

be construed as an actionable misrepresentation.  They do not

allege any representations regarding the policy or its coverage

were untrue or incorrect.  And though they do implicitly charge

that the alleged representation that Nationwide would provide

"prompt" and "fair" claims processing was not true, such a

representation would not be an actionable misrepresentation

because it is not a statement of existing fact.  See Addison v.

Allstate Ins. Co., 58 F. Supp. 2d 729, 732-33 (S.D. Miss. 1999)

(concluding that allegations of promises and/or representations

4

were conclusory and generic in nature and hence insufficient, as a

matter of law, to state a claim).  Finally, while plaintiffs

allege they relied on Beckwith's and The Nowell Agency's

"professional advice and representations," plaintiffs do not

allege that these defendants failed to procure adequate and proper

coverage for them,[2] and in any event, it is manifest that

plaintiffs' alleged harm in this case is not the result of a

failure to procure a policy which provides adequate and proper

coverage but rather is the result of Nationwide's failure to pay

benefits which plaintiffs contend are, in fact, payable under the

policy.  Accordingly, plaintiffs have no possibly cognizable claim

against Beckwith or The Nowell Agency for any representations or

actions in connection with the sale of the policy.

Plaintiffs' further allegations throughout the complaint that

Beckwith and The Nowell Agency breached the contract and their

implied duties of good faith and fair dealing in failing to pay

benefits under the insurance contract, and to do so in a timely

manner, likewise do not present a viable claim for relief against

these defendants.  Mississippi law is clear: an agent of a

---

[2]     Under Mississippi law, "[a]n insurance agent owes the
duty to his principal to exercise good faith and reasonable
diligence to procure insurance on the best terms he can obtain,
and any negligence or other breach of duty on his part which
defeats the insurance he procures will render him liable for the
resulting loss." First United Bank of Poplarville v. Reid, 612
So. 2d 1131, 1137 (Miss. 1992).  Plaintiffs have made no such
claim here.

disclosed principal is not a party to his principal's contract and cannot be liable for its breach.   Jabour v. Life Ins. Co. of North America, 362 F. Supp. 2d 736, 740-41 (S.D. Miss. 2005).   See also Jenkins v. Farmington Cas. Co., 979 F. Supp. 454, 457 (S.D. Miss. 1997) (agent who is not party to insurance contract is not liable for payment of contractual benefits).   "Similarly, it is clear that [an agent], as a non-party to the contract ha[s] no implied duty of good-faith and fair-dealing with regard to the performance of the contract and thus, cannot be liable under a bad-faith theory of recovery."   Jabour, 362 F. Supp. 2d at 736.

An agent may incur liability under Mississippi law independent of the insurance contract for conduct which is grossly negligent, malicious or which shows a reckless disregard for the rights of the insured.   See Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So.2d 777, 785 (Miss. 2004) (citing Bass v. California Life Ins. Co., 581 So. 2d 1087, 1089 (Miss. 1991)). "In other words, agents for insurance companies can be held liable for conduct that constitutes an independent tort."   Jabour, 362 F. Supp. 2d at 741 (citing Gallagher).   Although plaintiffs allege generally that the actions of all defendants, including Beckwith and The Nowell Agency, in connection with the investigation, adjustment and denial of their claim amount to "intentional wrongs constituting intentional torts," as to Beckwith and The Nowell Agency, these are conclusory allegations at best, for plaintiffs

6

certainly have not identified any actions by either of these

defendants that could potentially subject them to liability on

this theory.  See Peters v. Metropolitan Life Ins. Co., 164 F.

Supp. 2d 830, 834 (S.D. Miss. 2001) (holding that allegations

against non-diverse defendants "must be factual, not conclusory,

because conclusory allegations do not state a claim").  Indeed,

plaintiffs do not allege any facts suggesting involvement by

Beckwith or The Nowell Agency in investigating, adjusting or

denying their claim, and as is made clear in the uncontradicted

affidavits of Mike Nowell and Beckwith, The Nowell Agency and

Beckwith do not investigate claims; they do not adjust claims;

they do not make payment on claims if payment is due; and they do

not have any input in the investigation or adjustment of claims.

For all these reasons, it is manifest that plaintiffs have no

possibility of recovery against Beckwith or The Nowell Agency.

      As alleged in plaintiffs' complaint, Larry Whitehead, an

employee of Nationwide, was the claims representative assigned to

investigate and adjust their claim.  The gist of plaintiffs'

allegations against Whitehead is that he and Nationwide, instead

of promptly paying plaintiffs' claim, "engaged in a course of

action to find reasons to deny Plaintiffs' claims and/or the delay

[sic] paying Plaintiffs' claims," and after much needless delay,

refused to pay plaintiffs' claim without any legitimate or

arguable reason, all of which constitute a breach of the insurance

contract, a breach of defendants' implied duty of good faith and
fair dealing, and was intentional, or so grossly negligent and in
reckless disregard of plaintiffs' rights as to constitute an
independent tort by Whitehead, namely, intentional infliction of
emotional distress.

Of course, for the reasons stated supra, as a nonparty to the
contract of his disclosed principal, Nationwide, Whitehead cannot
be held liable for breach of contract, or for breach of the duty
of good faith and fair dealing, and the question becomes whether
plaintiffs' complaint discloses any other potentially viable
claim.  In this vein, plaintiffs' repeated incantation in their
complaint that Whitehead's actions amounted to gross negligence,
intentional misconduct, reckless, willfulness, wantonness, and the
like, is perhaps understandable, given that "an insurance adjuster
. . . may not be held liable for simple negligence in connection
with adjusting a claim," but rather "'can only incur independent
liability when his conduct constitutes gross negligence, malice,
or reckless disregard for the rights of the insured'." Gallagher,
887 So. 2d at 784 (quoting Bass).  The court in Gallagher
clarified and emphasized this principle, stating,

> [A]n insurance adjuster, agent or other similar entity
> may not be held independently liable for simple
> negligence in connection with its work on a claim.  Such
> an entity may be held independently liable for its work
> on a claim if and only if its acts amount to any one of
> the following familiar types of conduct: gross
> negligence, malice, or reckless disregard for the rights
> of the insured.

8

Id.  The fact, though, that plaintiffs have used the magic words
does not mean that they thus have the requisite possibility of
recovery against Whitehead as would secure remand.  In the court's
opinion, plaintiffs have no reasonable possibility of recovery
against Whitehead based on the allegations of their complaint.

Plaintiffs' complaint is replete with their conclusory
allegation that Whitehead engaged in conduct which was
intentional, grossly negligent or in reckless disregard of their
rights; but as with Beckwith and The Nowell Agency, they fail to
identify any conduct that would so qualify.  There are, in fact,
few factual allegations at all in plaintiffs' complaint.  The only
arguable factual allegation relating to Whitehead's adjustment of
their claim is plaintiffs' charge that he and Nationwide engaged
in a course of conduct designed to delay, and ultimately deny
payment of plaintiffs' claim, with respect to which charge they
specifically allege that Nationwide and Whitehead, "in an effort
to defeat and/or delay payment of benefits to the Plaintiffs,
required the Plaintiffs to submit additional qualifying tasks,
including but not limited to" allowing Nationwide to inspect the
property on numerous occasions; supplying financial information,
including income records, tax returns, bank account records,
credit card statements, mortgage payments, etc., covering a period
of three yeard; and submitting to statements under oath.

Merely requiring insureds to allow inspections–even numerous inspections–of the insured property, to provide information regarding their financial condition and to submit to examinations under oath hardly qualifies as intentional or reckless misconduct. Rather, all of these "additional qualifying tasks" plaintiffs complain were required of them by Whitehead in his adjustment of their claim are manifestly legitimate aspects of any fire loss investigation.  In short, it cannot reasonably be said that an investigation by Whitehead which consisted of numerous inspections of the property, review of several years of the insureds' finances and consideration of the insureds' sworn testimony constituted intentional or grossly negligent conduct or conduct in reckless disregard of the insured's rights; and as plaintiffs have suggested nothing more that Whitehead did that could so qualify, they have no possibility of recovery against him.

Based on the foregoing, the court concludes that plaintiffs' motion to remand is not well taken and should be denied.

SO ORDERED this 12th day of May, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

10